IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**ANTHONY BROWN,**

        Plaintiff,

  vs.

**LANE COUNTY; DR. ALFREDO VELEZ; NATHAN L. GENT; WELLPATH, LLC; JOHN/JANE DOES 1-5,**

        Defendants.

Case No. 6:21-cv-01866-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Anthony Brown proceeds *in forma pauperis* ("IFP") in this civil rights action against Defendants Deputy Nathan Gent and Lane County. Before the Court is Defendants' motion for summary judgment ("MSJ"), ECF No. 55. For the reasons explained, Defendants' motion is GRANTED. This case is DISMISSED. Judgement shall be entered accordingly.

## BACKGROUND

### I. Procedural Background

Plaintiff was incarcerated at Lane County Adult Correctional Facility for an Assault 4, strangulation charge in October 2019. Second Am. Compl. ("SAC") ¶ 9, ECF No. 27. There, he received mental health treatment, including medication. Plaintiff filed this case on December 23, 2021, ECF No. 1, against his treating physician, Dr. Alfredo Velez; Lane County; and a correctional Deputy, Nathan Gent. *Id*. The gist of Plaintiff's claims is that Dr. Velez negligently prescribed medication that made Plaintiff "nonresponsive" and that Deputy Gent used excessive force when restraining Plaintiff in his nonresponsive state.

Under the protocols for analyzing cases brought IFP, The Court screened and dismissed Plaintiff's complaint on January 21, 2022, finding the allegations deficient. ECF No. 7. However, the Court granted leave to amend, providing Plaintiff an opportunity to remedy the identified deficiencies. *Id*. Plaintiff filed an amended complaint on February 12, 2022. After Defendant Dr. Velez filed a motion to dismiss, Plaintiff requested leave to file a second amended complaint. The Court granted Plaintiff's request, and Plaintiff repleaded his allegations a third time on September 22, 2022. ECF No. 27.

In the course of litigation, the Court extended discovery several times. ECF Nos. 24, 32, 39. Still, Plaintiff failed to respond to discovery requests from Defendant Dr. Velez. After Dr. Velez moved for summary judgment, Plaintiff filed an untimely motion asking for more time to respond to Dr. Velez's requests for admission. The

Court found that, in reaching its decision on summary judgment, evidence in the record was sufficient, such that the Court need not rely on Plaintiff's admissions or lack thereof. Op. and Order, ECF No. 51 at 9. The Court granted summary judgment, and Dr. Velez was dismissed from the case. *Id.*

The Court again extended the time for discovery through March 15, 2024, on which date dispositive motions were due. ECF No. 50. However, from the time Plaintiff filed the case until the close of discovery on March 15, Plaintiff failed to schedule or otherwise obtain depositions from Lane County or Deputy Gent. Just before the close of discovery, Defendants conferred with Plaintiff on their motion for summary judgment. That conferral spurred Plaintiff to request another 120 days to depose Defendants. ECF No. 52. On March 15, Defendants moved for summary judgment. Because Plaintiff failed to provide any explanation evincing diligence on his part to obtain the discovery he needed or show good cause why the Court's scheduling order should be amended to again save counsel from his delays, the Court denied Plaintiff's motion to extend discovery. ECF No. 62.

## II.     Factual Background

A factual discussion of Plaintiff's medical history, treatment, treatment refusal, and care alleged to be related to excessive use of force can be found in the Court's prior opinion granting summary judgment and dismissing Dr. Nathan Velez from this case. *See* Op. and Order at 1-5, ECF No. 51.

As to Plaintiff's claims against Deputy Gent and Lane County, Plaintiff alleges that around January 3rd, 2020, corrections staff brought Plaintiff to the medical

Page 3 – OPINION AND ORDER

segregation unit to be assessed. SAC ¶ ECF 27. Plaintiff alleges that Deputy Gent "subdue[ed]" Plaintiff in his cell and "[got] him into a wheelchair." *Id.*

During transport to the medical segregation unit, Plaintiff was "non-responsive" to staff requests. *Id.* In the process of getting Plaintiff from transport to the medical unit, Plaintiff alleges that Deputy Gent "slammed him to the ground." *Id.* During the incident, Plaintiff alleges that he was suffering from side effects of medications, including feeling dazed, incoherent, and confused. *Id.* ¶ 10.

Defendant Lane County maintains video surveillance of the jail and the interaction between Deputy Gent and Plaintiff was recorded. Vejar Decl. ¶ 3 (ECF No. 55-1). Per the Declarations of Deputy Gent and Kyle Seaholm, along with the Use of Force Report issued on the incident and the video surveillance, Defendants maintain that the only use of force applied to Plaintiff occurred when securing his hand restraints in the Day Room. Gent Decl. ¶ 7 (ECF No. 55-2); Seaholm Decl. ¶ 5 (ECF No. 55-4); Vejar Decl., Exhibit 1.

After the incident, Plaintiff submitted several Non-Emergent Health Services Request Forms. Evidence in the record is that none of those request forms included any reference to conditions arising from use of force. Vejar Decl., Exhibit 3. Defendants supply evidence that Plaintiff had several Medical Sick Calls during the relevant time, but that none of which allude to a use of force incident as a cause of pain or discomfort for him. Quillan Decl. (ECF No. 55-3), Exhibit 1. The record shows that Plaintiff's Medical Sick Call on January 14th, 2020 notes that Plaintiff

complained of pain in his forehead, and on March 12th, 2020, he credits his pain to sleeping on the thin jail mattress. *Id.*

Plaintiff alleges two federal causes of action. First, Plaintiff alleges that "violent treatment" by Deputy Gent amounts to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. SAC ¶ 24. The second federal claim is a *Monell* Claim which attempts to establish that Lane County has a written or unwritten policy, custom or practice, of physical beatings and excessive force. *Id.* at 38.

Plaintiff's state law-based claims allege four separate causes of action. First, Plaintiff alleges that Deputy Gent committed the intentional tort of battery against Plaintiff. *Id.* at 26. Second, Plaintiff alleges that Defendant Lane County acted negligently in failing to train its employees in properly medicating inmates and in the transport of non-responsive and ill inmates. *Id.* at 27. Third, Plaintiff alleges intentional infliction of emotional distress based on the alleged incident. *Id.* at 34. Finally, Plaintiff alleges negligent infliction of emotional distress in the alternative of the intentional infliction of emotional distress. *Id.* at 35

## LEGAL STANDARD

A party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists only "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009).

The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at 250.

Additionally, "[i]t is not the district court's job to sift through the record to find admissible evidence in support of a non-moving party's case." *Claar v. Burlington N.R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (citing *Celotex*, 477 U.S. at 324). Therefore, when a plaintiff makes assertions but does not identify specific evidence in the record to support those assertions, the court is not required to search for it. *See F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (citations omitted) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment.").

## DISCUSSION

**I.     Eighth Amendment Cruel and Unusual Punishment**

The unnecessary and wanton infliction of pain violates the cruel and unusual punishment clause of the eighth amendment. *Hudson v. Mcmillian*, 503 U.S. 1, 5 (1992). When a plaintiff alleges that correctional officers used excessive force against him, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam); *Furnace v. Sullivan*, 705 f.3d 1021, 1028 (9th Cir. 2013). The standard has both objective and subjective elements. Objectively, the alleged wrongdoing must be "harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (internal quotation marks and citations omitted). Subjectively, prison officials must act "with a sufficiently culpable state of mind," *id.*, but an "express intent to inflict unnecessary pain is not required." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

To determine whether a particular use of force evinces the wanton infliction of pain, the court must "consider the objective need for force, the relationship between any such need and the amount of force actually used, the threat reasonably perceived by the correctional officer, whether the officer took efforts to temper the severity of his response, and the extent of the inmate's injury." *Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir. 2003). In considering use of force measures, courts must afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22.

Here, the allegations include that Deputy Gent "subdue[ed]" Plaintiff in his cell and got Plaintiff into a wheelchair, and at some point, slammed him to the ground. The evidence in the record includes detailed "use of force" reports. In his report, ECF No. 55-2 at 6-7, Deputy Gent states that on January 3, he responded to a call from medical staff that Plaintiff was unresponsive in his cell. Deputy Gent noted that Plaintiff "seemed to be disoriented and was tensing his muscles." *Id* at 6. Deputy Gent further reported:

> Brown began to tense his arms but was not trying to pull away. Brown was escorted up the stairs where he was placed into a wheelchair. Brown did not comply with verbal commands and had to be placed into the wheelchair by staff. Brown was tensing his body and would not sit in the wheelchair. I placed a hand on Brown's forehead and placed pressure down in order to assist him into the wheelchair. As Brown was being wheeled from the day room he began to slowly kick his legs towards staff. I retrieved leg restraints from the 3N office. As I was attempting to place the restraints on his legs Brown began to tense his body and lift his legs. I placed my knee over the top of Brown's thigh in order to keep him from lifting his right leg. I placed the leg restraints on his right leg and double locked them. Once the other leg was secured Brown was escorted to 1E03. Brown continued to tense his body during the rehouse and search but never tried to pull away from staff.

*Id*. at 7. Reports filed that day from other correctional staff who assisted in getting Plaintiff into a wheelchair and transported to the medical unit state that Plaintiff was tense and resistant, and that they placed a hand on a shoulder, over a knee, or held his arm to get him into the proper restraints. *See id*. at 8-12. Video evidence in the record shows correctional staff securing Plaintiff's hand restraints in the Day Room. *See*, Gent Decl. ¶ 7; Seaholm Decl. ¶ 5; Vejar Decl., Exhibit 1.

In response to Defendants' summary judgment motion, Plaintiff states that the alleged use of force potentially took place outside of the view of the video surveillance

Page 8 – OPINION AND ORDER

footage produced by Defendants and reasserts the claims made in the Complaint. ECF No. 59. However, the party opposing summary judgment "may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. 242, 256 (1986).

Plaintiff's claim that he was slammed to the ground and that his shoulder was dislocated is not borne out in the record. Evidence in the record, including video evidence, is that "extent of the injury" was minimal, the "need for application of the force" that was utilized was appropriate and it was a "good-faith effort to restore discipline." *Marquez,* 322 F.3D at 692. Defendants' evidence is that Deputy Gent used appropriate force to restrain Plaintiff from kicking staff and from injuring himself by getting out of his wheelchair.

Further, according to the Medical Sick Calls Plaintiff made directly after the incident, he did not complain about his shoulder being dislocated or any injury that was caused by Deputy Gent or the incidents of the day in question. *See* Quillan Decl., Exhibit 1. The only pain Plaintiff noted on or around the time of the alleged incident was to his forehead, which is consistent with the use of force applied by Deputy Gent outlined in his Use of Force Report. Gent Decl. ¶ 6. The record is that the extent of Plaintiff's pain was minimal, and that Plaintiff did not allege pain in his forehead as part of his complaint. *See* SAC, ECF No. 27.

Even if some action by Deputy Gent was taken outside of a camera view, Plaintiff nonetheless failed to meet his burden as to Defendants' arguments on

qualified immunity and whether Deputy Gent's actions qualify as malicious or sadistic. Defendants are entitled to summary judgment on this issue.

## II. *Monell* Claim

In its *Monell* decision, the U.S. Supreme Court found that Congress intended for § 1983 to apply to municipalities and other local government units such that local governments may be held liable under § 1983 "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quotation marks omitted); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

In order to establish municipal liability under *Monell*, a plaintiff must show that a policy or custom of a municipality "reflects deliberate indifference to the constitutional rights of its inhabitants and led to an injury." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). In order to prevail on a claim like this, a plaintiff must prove: "1. The plaintiff was deprived of a constitutional right; 2. the entity defendants had a longstanding practice or custom; 3. the entity defendants' longstanding practice or custom . . . was unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm; 4. the entity defendants' longstanding custom or practice caused harm to plaintiff." *Castro*, 833 F.3d at 1073-74.

To impose liability against an entity for its failure to act, a plaintiff must show: (1) that an employee violated the plaintiff's constitutional rights; (2) that the entity has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of

Page 10 – OPINION AND ORDER

constitutional rights. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185-86 (9th Cir. 2006).

Plaintiff does not provide information to support his claim that Lane County has a policy or custom that would have led Deputy Gent to act in a way that infringes on Plaintiff's rights or amounted to deliberate indifference. In Plaintiff's Complaint, he alleges that Defendant Lane County has a "written or unwritten, policy, custom or practice, of physical beatings and excessive force." SAC ¶ 38. However, there is no evidence in the record of such a policy, written or unwritten. Defendants are entitled to summary judgment on this issue.

## III. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether a defendant is entitled to qualified immunity, the court engages in a two-part analysis. First, the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 235–236 (2009). Second, the court asks, "whether the right was clearly established." *Id.* A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. A court has discretion to decide

"which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Mueller v. Auker*, 576 F.3d 979, 993–94 (9th Cir. 2009). Here, as discussed above, Plaintiff has failed to establish the violation of any statutory or constitutional right, *i.e.*, the first prong of the qualified immunity test. Therefore, it is unnecessary to reach the question of whether Defendants are entitled to qualified immunity.

## IV. State Law Claims

### A. *Battery*

The tort of battery requires (1) a person act with intent to cause harmful or offensive contact with another person, and (2) those actions directly or indirectly cause a harmful or offensive contact with that other person. *Underwood v. City of Portland*, 319 Or. App. 648, 657 (2022); *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249 (1976).

Plaintiff has provided no information as to the intent behind Deputy Gent's actions. Defendants have presented evidence, through reports written by multiple correctional staff on the day of the incident, declarations, and video surveillance, that Gent's actions were aimed at safely transporting Plaintiff to the medical unit to receive treatment. Plaintiff has provided no evidence that Deputy Gent's conduct was with the intent to cause harmful or offensive contact. Deputy Gent explains in his Use of Force Report that the pressure that was applied to Plaintiff was meant to help keep him in his wheelchair while he was being transported to the medical segregation unit. Gent Decl., Exhibit 1 at 5. Furthermore, the footage of the events

that occurred within the Day Room shows that Gent did not slam Plaintiff to the ground, but rather applied pressure to keep him in the wheelchair and held his legs to place restraints. Vejar Decl., Exhibit 1; Gent Decl., ¶ 6. Defendants are entitled to summary judgment on this point.

### B. *Negligence*

To prove a case for negligence, a Plaintiff must plead and then prove "(1) that [the] defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that [the] defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of [the] plaintiff's harm, and (5) that [the] plaintiff was within the class of persons and [the] plaintiff's injury was within the general type of potential incidents and injuries that made [the] defendant's conduct negligent." *Piazza ex rel. Piazza v. Kellim*, 271 Or. App. 490, 516 (2015) (quoting *Stewart v. Kids Inc. of Dallas*, 245 Or. App. 267, 274-275 (2011)).

Plaintiff alleges that Lane County's failure to administer training regarding medical treatment and properly medicating inmates or in the handling and custodial treatment of non-responsive inmates resulted in Plaintiff's harm. However, Plaintiff has no evidence to support that any failure on Lane County's part to train, hire, supervise, or discipline resulted in the harm suffered by Plaintiff. Plaintiff must raise a genuine issue of material fact as to each element of his negligence claim. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (A plaintiff opposing a motion for summary judgment "must identify affirmative evidence from which a jury could find

Page 13 – OPINION AND ORDER

that the plaintiff has carried his [ ] burden of proving" the elements of his claim). The record contains no evidence that Lane County was deficient or that any failure to train resulted in the injury Plaintiff is alleging. Defendants are entitled to summary judgment on this claim.

    C.    *Intentional Infliction of Emotional Distress*

Under Oregon law, the elements of an IIED claim are: (1) the defendant intended to inflict severe emotional distress on the plaintiff; (2) the defendant's acts were the cause of the plaintiff's severe emotional distress; and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Conroy v. Clark*, 2020 WL6731724 *1, 5 (D. Or. 2020).

Beginning with intent, the "intent element is established where the actor desires to inflict severe emotional distress and also where the actor knows that such distress is certain, or substantially certain, to result from the conduct." *Id.* at 6 (citing *Simspon v. Burrow*, 90 F. Supp. 2d 1108, 1124 (D. Or. 2000)); *Mullen v. Meredith Corp.*, 271 Or. App. 698, 714 (2015). Second, a plaintiff must adequately allege that the defendant's acts were the cause of a plaintiff's severe emotional distress. Finally, a plaintiff must plead sufficient facts to support a finding that the defendant's actions transgressed the bounds of socially tolerable conduct. Whether the alleged conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law for the court. *Conroy*, 2020 WL6731724 at *6.

The record contains no evidence to support that Deputy Gent intended to inflict emotional distress; that Deputy Gent's actions were the cause of Plaintiff's severe

Page 14 – OPINION AND ORDER

emotional distress; or that the limited force used by Deputy Gent was outside the bounds of socially tolerable conduct. The evidence in the record is that the force applied was to aid Plaintiff during transport to the medical unit. In Plaintiff's response, he failed to raise any arguments that would support his claim for intentional infliction of emotional distress. Defendants are entitled to summary judgment on this claim.

### D.  *Negligent Infliction of Emotional Distress*

With limited exceptions, Oregon courts do not permit the recovery of damages for negligently inflicted emotional distress in the absence of evidence of some related physical injury. *Simons v. Beard*, 188 Or. App. 370, 375-376 (2003); *Hammond v. Central Lane Communications Center*, 312 Or. 17 (1991). Courts refer to the physical impact rule as requiring a physical injury that gives rise to emotional distress. *Simons*, 188 Or. App. at 376; *Fehely v. Senders*, 170 Or. 457, 461 (1943). At a minimum, the physical impact rule requires an act or omission that results in some perceptible physical effect on a plaintiff. *Simons*, 188 Or. App. at 376.

The totality of the record supports that the only use of force occurred when Deputy Gent needed to place Plaintiff into the wheelchair. Even if the alleged incident did occur in Plaintiff's cell, an assertion contradicted by correctional staff reports, there is no evidence that would support a genuine issue of material fact concerning the emotional distress it would have caused Plaintiff. The evidence is that Plaintiff did not make any reports that the incident involving Deputy Gent caused him harm, but he made several complaints about his mental health through Non-

Emergent Health Services Request Forms crediting the issues to the medications he was prescribed and other conditions of confinement. Vejar Decl., Exhibit 3. In Plaintiff's response, he did not point to any evidence of emotional distress suffered or evidence to support that his emotional distress was caused by the physical injury that was alleged. Defendants are entitled to summary judgment on this point.

## CONCLUSION

For the reasons explained, Defendants' Motion for Summary Judgment, ECF No. 55, is GRANTED. This case is DISMISSED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this  5th  day of   June   2024.

_____ /s/Ann Aiken

Ann Aiken
United States District Judge
